**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DESHAWN WHITMAN,

    Petitioner,                                                      Civil No. 09-12969
                                                                     Honorable Gerald E. Rosen

v.

CARMEN PALMER, Warden,

    Respondent.
_____/

**<u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING CERTIFICATE OF APPEALABILITY</u>**

Petitioner, Deshawn Whitman, presently incarcerated at a Michigan correctional facility, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, carjacking, MICH. COMP. LAWS § 750.529a, felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm, MICH. COMP. LAWS § 750.227b. For the reasons stated below, the Court denies the petition. The Court also declines to issue Petitioner a certificate of appealability.

### I. <u>Background</u>

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Defendants were tried jointly n1, as a result of two shootings on April 6, 2000. Relating to the murder charges, Erwin Wilson was shot and killed

in front of 4171 Drexel, in Detroit. The assault with intent to murder and carjacking charges arose out of another shooting, in which Jermaine Davenport, Wilson's cousin, was shot in the neck and his vehicle, a Yukon, was taken. Both defendants were acquitted of first-degree murder and the lesser offense of second-degree murder.

n1 Marcus Taylor was tried with defendants, and was acquitted of all charges (relating to both shootings).

The prosecution's theory was that Hill, Whitman, Taylor and a fourth man, were in a black SUV around 10:00 p.m. on April 6, 2000, and shot and killed Erwin Wilson, a street-level drug dealer, in front of 4171 Drexel Street. A few minutes later, the black SUV approached Jermaine Davenport, Wilson's cousin, who was in another SUV parked on the street talking to fourteen-year-old Unique Webster. Someone from the black SUV shot at Davenport and the SUV and chased him, until Davenport's SUV crashed into a parked car and stopped. Davenport got out of his SUV and was shot at by Whitman and the others. Davenport sustained a gunshot wound to the neck, and Davenport's SUV was taken by several of the perpetrators. Davenport walked to the house on Drexel, saw Wilson lying in the street, and saw Roosevelt Walker, a friend of Davenport's with whom Davenport had been earlier. Davenport did not name any perpetrators until well after the shootings. In May 2000, Davenport was charged with Wilson's murder, but the charges were later dropped.

Defendant Whitman's defense theory was that Jermaine Davenport argued with Wilson on the evening in question and was in the SUV from which the shot that killed Wilson was fired. Defendant Hill's defense was that he was not present at either shooting incident, and that Jermaine Davenport, who was involved in drug-dealing along with Wilson, had every reason to lie regarding this case.

*People v. Whitman*, 2006 Mich. App. LEXIS 314, *2-3 (Mich. Ct. App. Feb. 7, 2006).

Petitioner filed an appeal by right. His appellate counsel filed a brief in the Michigan Court of Appeals that raised four claims:

I. Defendant is entitled to resentencing when the record does not set forth the sentence or the reason for the same and does not reflect that he was entitled to allocute.

II. The trial court erred in not allowing defense counsel to cross examine Roosevelt Walker regarding a prior inconsistent statement provided at a preliminary examination hearing which was stricken on the grounds of

hearsay.

III. Defendant was deprived of the effective assistance of counsel where his attorney failed to file a motion for a new trial on the grounds that his conviction was against the great weight of the evidence.

IV. The trial court abused its discretion in denying defendant's motion for directed verdict where the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he assaulted Jermain Davenport with intent to murder, carjacked his vehicle, was a felon in possession of a firearm, and committed felony-firearm.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence in an unpublished opinion. *Ibid.*

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. The application raised the same four claims raised in the court of appeals, and it also included six new claims:

I. The prosecutor abused his charging authority in the first degree murder, assault with intent to murder, carjacking, felon in possession, felony firearm, in violation of Appellant's constitutional right to due process.

II. Appellant was denied his constitutional right to effective assistance of counsel by actual conflict of interest; which also violated Michigan Court Rule 6.005(f) & (g), and the Michigan Rules of Professional Conduct 1.7 through 1.9.

III. Appellant was denied his due process and his right to a fair trial where there was insufficient evidence to support his conviction for assault with intent to murder, carjacking, felon in possession, and felony firearm.

IV. Though no proper foundation was laid, the trial court permitted the prosecution to present to the jury uncorroborated facts and testimony regarding the alleged drivers license belonging to Terry Lee Spielman in violation of Appellants constitutional right to due process and to a fair trial.

V. Appellant counsel was denied his constitutional right to effective assistance of counsel in his appeal of right.

VI. The cumulative effect of the errors committed during appellant's trial

require relief because he did not receive a fair trial under both the state and federal constitutions.

The Michigan Supreme Court denied leave to appeal by standard order. *People v. Whitman*, 477 Mich. 927, 723 N.W.2d 204 (2006).

Petitioner subsequently returned to the state trial court and filed a motion for relief from judgment. The motion raised nine claims:

> I. Mr. Whitman was denied his fundamental constitutional rights to raise a complete defense, confrontation, and to have the jury determine credibility of Jermaine Davenport uninfluenced by opinions of prosecutor and investigating officer thus depriving him of his right to a fair trial; the opening statement promised went unfulfilled.
>
> II. The prosecutor deprived Mr. Whitman of a fair trial when he engaged in misconduct by seeking to bolster testimony of his witnesses, misrepresented facts in evidence, asserting facts not in evidence, and suggesting Whitman's guilt and Davenport's innocence.
>
>> a. Mr. Whitman was denied his right to a fair trial when the prosecution improperly elicited testimony from Sergeant Abdella commenting on defendant's right to remain silent and in doing so shifted the burden [of] proof to the defense.
>
> III. The alleged unwritten statements made to Sergeant Abdella must be suppressed because they were taken while Mr. Whitman was lodged in the Wayne County Jail awaiting trial on a second case of which the right to counsel had attached.
>
> IV. Mr. Whitman was denied his right to due process and a fair trial by admitting testimony that he committed fraud when: (a) he allegedly used a false name and obtained a false driver's license, and (b) by admitting testimony that he was under a federal criminal investigation where there was no testimony regarding Whitman's involvement in the alleged crimes, the prosecution never connected the testimony to any alleged motive, and the evidence was overwhelmingly prejudicial.
>
> V. Mr. Whitman's attorney was totally absent from trial during a critical stage where further evidence was taken and the court gave further instructions to the jury amounting to a complete denial of counsel; standby counsel also represented the co-defendant and the court failed to inquire into potential for a conflict of interest; Mr. Whitman never waived his right to counsel.

VI. Defendant Whitman was denied due process and fir trial where the prosecution failed to investigate the real possibility that its witnesses were conspiring to commit imminent perjury at trial.

VII. Defense counsel was ineffective and deprived Mr. Whitman of his Fourteenth Amendment constitutional right to present the defense of third-party culpability.

VIII. Mr. Whitman was denied his rights to the effective assistance of trial counsel and a fair trial under both state and federal constitutions where counsel failed to object to admission of prejudicial evidence, failed to raise a viable defense, and counsel's otherwise deficient performance as set forth in issues I through VIII.

IX. This case can and should be heard on its merits without regard to "cause" since DeShawn Whitman can show that: (a) he had ineffective assistance of appellate counsel and the absence of counsel at a critical stage claim qualifies as "structural defect", i.e., jurisdictional defect which can be raised at any time; (a) it would result in a miscarriage of justice not to hear the case; and (c) he is actually innocent of the crime for gateway purposes.

The trial court denied the motion in an opinion dated January 10, 2008. The trial court stated, in pertinent part, "defendant has failed to demonstrate 'good cause' for failing to raise these issues in his prior motions or on appeal. He has also failed to demonstrate that he suffered actual prejudice from any of the alleged irregularities." Opinion, at 2.

Petitioner appealed this decision in the Michigan Court of Appeals, but his application for leave to appeal was denied "for failure to demonstrate entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Whitman*, Michigan Court of Appeals No. 283917 (August 29, 2008). Petitioner then pursued relief in the Michigan Supreme Court based on the same issues, but his application for leave to appeal was also denied under Rule 6.508(D). *People v. Whitman*, 483 Mich. 913, 762 N.W.2d 510 (2009).

Petitioner's amended petition for writ of habeas corpus enumerates nine claims:

I. The evidence was insufficient to convict Mr. Whitman beyond a reasonable doubt of assault with intent to commit murder, carjacking, felon in possession

of a firearm, and felony firearm.

II. Mr. Whitman was denied his fundamental constitutional rights to raise a complete defense, confrontation, and to have the jury determine credibility of Jermaine Davenport uninfluenced by opinions of the prosecutor and investigating officer, thus depriving him of his right to a fair trial; the opening statement of the prosecutor regarding Davenport went unfulfilled.

III. The prosecutor deprived Mr. Whitman of a fair trial when he engaged in misconduct by: (a) seeking to bolster testimony of his witnesses, misrepresented facts in evidence, asserted facts not in evidence, and suggested Whitman's guilt and Davenport's innocence, and (b) improperly eliciting testimony from Sgt. Abdella commenting on Mr. Whitman's right to remain silent and shifting the burden of proof to the defense.

IV. The alleged written statements made to Sergeant Abdella must be suppressed because they were taken while Mr. Whitman was lodged in the Wayne County jail on a second case of which the right to counsel had attached.

V. Mr. Whitman was denied his right to due process and a fair trial when the state court admitted testimony that he committed fraud when (a) he allegedly used a false name and obtained a false driver's license; and (b) admitting testimony that there was no testimony regarding the extent or substance of Whitman's involvement in the alleged crime, the prosecution failed to connect the testimony to any alleged motive in this crime, and the evidence was overwhelmingly prejudicial.

VI. Mr. Whitman was actually denied his right to counsel when (a) counsel was totally absent from trial during a critical stage where further evidence was taken and the trial court gave further instructions to the jury amounting to a complete denial of counsel; and (b) standby counsel also represented the co-defendant and the court failed to inquire into a potential conflict of interest and Mr. Whitman never waived his right to counsel.

VII. Mr. Whitman was denied due process and a fair trial where the prosecution failed to investigate the real possibility that its witnesses were conspiring to commit imminent perjury at trial.

VIII. Mr. Whitman was denied the effective assistance of counsel in the following ways: (a) defense counsel failed to raise the defense of third-party culpability; (b) failed to object to the admission of prejudicial evidence; and (c) failed to object to numerous instances of prosecutorial misconduct.

IX. This case can and should be heard on its merits because "cause and

prejudice" is satisfied where: (a) Appellate counsel was ineffective on appeal; (b) issue VI qualifies as "structural defect" and a "jurisdictional defect" under Michigan law which can be raised at anytime; (c) it would result in a fundamental miscarriage of justice not to hear the case on its merits; and (d) Mr. Whitman is "actually innocent" of the crime for gateway purposes.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal

7

system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, No. 2011 WL 148587, * 11 (U.S. 2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. 770.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing*

*Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." 131 S.Ct. at 786-787.

## IV. Discussion

### A. Insufficiency of the Evidence

Petitioner first claims that insufficient evidence was presented at his trial to sustain his convictions because they are based only on the unreliable testimony of Jermaine Davenport and Roosevelt Walker. The Michigan Court of Appeals rejected this claim on the merits as follows:

> Defendant Whitman next argues that the trial court abused its discretion in denying defendant's motion for directed verdict. Defendant maintains that his convictions are based solely on the unbelievable and inconsistent testimony of Jermaine Davenport and his friend, Roosevelt Walker, and that his own name (Whitman) did not become involved in the investigation until after Davenport was implicated in the homicide of Erwin Wilson. At no time before did Davenport identify defendant Whitman as the person who shot him in the neck. Defendant asserts that the number of inconsistencies in Davenport and Walker's testimony should have created a reasonable doubt in the jury's mind and ought to have been insufficient to convict Whitman of the charges.
>
> We conclude that the trial court properly denied defendant's motion for a directed verdict. Despite the many inconsistencies in Davenport's testimony, a reasonable jury could believe Davenport and find that defendant and his accomplices shot Davenport and carjacked his SUV. The parties stipulated that defendant had been convicted of a specified felony for purposes of the felon in possession of a firearm and felony-firearm charges. Thus, viewing the evidence in a light most favorable to the prosecution, sufficient evidence was presented to support defendant's convictions.

*Whitman*, 2006 Mich. App. LEXIS 314, *9-11.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). A habeas court must defer to the fact finder for its assessment of the credibility of witnesses. *Id.* The Court does not need to be convinced that the petitioner is actually guilty beyond a reasonable doubt. *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995).

The decision of the state appellate court rejecting Petitioner's claims did not result in an unreasonable application of this standard. Petitioner questions the credibility of Davenport and Walker's testimony, but assessing the credibility of witnesses was a matter for the jury to decide and is not an appropriate subject for habeas review. *See Schlup v. Delo*, 513 U.S. 298, 333 (1995)*; Pinchon v. Myers*, 615 F.3d 631, 644 (6th Cir. 2010). The only issue is whether the jury could reasonably infer from the evidence that Petitioner

committed the crime of conviction. *See White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

Despite contradictions in Davenport's testimony and similar problems presented by Walker's testimony, there were compelling reasons for the jury to chose to believe them. Viewed most favorably to the prosecution, circumstantial evidence presented at trial undermined the defense's suggestion that Davenport murdered Wilson and then falsely accused Petitioner and his co-defendants. So viewed, the evidence showed that Davenport did not have gunshot residue on his hands, that he ran back to the murder scene, that his truck was stolen after it crashed, that the shell casings from both shooting sites matched, and that there was another vehicle besides Davenport's involved in the shootings because there was evidence of a high speed chase. Given this evidence, a jury could rationally conclude beyond a reasonable doubt that the essential part of Davenport's testimony - that Petitioner and not Davenport was the perpetrator of the crimes - was true.

While the case was obviously closely tried, review at this point "is limited to determining whether the evidence was so overwhelmingly in favor of the petitioner that it compelled a verdict in his or her favor." *Thompson v. Bock*, 215 F. App'x 431, 436 (6th Cir. 2007). It did not. The prosecutor's key witnesses certainly had credibility problems, but they were not so great as to prevent the state appellate court from reasonably rejecting his sufficiency-of-the-evidence claim. Petitioner's first claim for relief is therefore without merit.

### B. Claims Raised in Motion for Relief from Judgment

Petitioner's remaining claims were not presented to the state courts during his appeal of right. Rather, these claims were first presented to the state trial court in his

motion for relief from judgment. The trial court denied the motion under Michigan Court Rule 6.508(D)(3) because Petitioner had not demonstrated "good cause" or prejudice for failing to have raised them previously. The state appellate courts subsequently denied relief by using the form order citing to Rule 6.508(D). Respondent asserts that review of these claims is procedurally barred because the state trial court relied on a state procedural rule in denying Petitioner relief.

Federal habeas relief is precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell*, 244 F.3d 533, 539 (6th Cir. 2001). The last explained state court judgment should be used to make this determination. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id.*

The Michigan appellate courts denied relief pursuant to Michigan Court Rule 6.508(D), which provides, in part, that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom. See MICH. CT. R. 6.508(D)(3). The Sixth Circuit has held, however, that the form order used by the Michigan Supreme Court to deny leave to appeal in this case is unexplained because its citation to Michigan Court

Rule 6.508(D) is ambiguous as to whether it refers to a procedural default or a rejection on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 291-92 (6th Cir. 2010) (en banc). Consequently, under *Guilmette*, the Court must "look through" the unexplained order of the Michigan Supreme Court to the state trial court's decision to determine the basis for the denial of state post-conviction relief.

In this case, the state trial court clearly denied relief on procedural grounds. The trial court cited Michigan Court Rule 6.508(D)(3) and concluded that Petitioner had failed to demonstrate good cause and actual prejudice on the basis of his claim of ineffective assistance of appellate counsel. Accordingly, Petitioner's second through ninth claims are procedurally defaulted.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996).

Petitioner asserts in his ninth claim ineffective assistance of appellate counsel as cause to excuse his default. In order to establish ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must ... determine whether, in light of all the circumstances, the

13

> identified acts or omissions were outside the wide range of professionally competent assistance . . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690. Judicial scrutiny of counsel's performance is thus "highly deferential." *Id.* at 689. The defense is prejudiced only if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the ... goal of vigorous and effective advocacy .... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754.

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *See Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," defined as an

14

issue which was obvious from the trial record and would have resulted in reversal on appeal. *See Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that by omitting the claims presented in his motion for relief from judgment, appellate counsel's performance fell outside the wide range of professionally competent assistance. Appellate counsel presented legitimate issues on direct appeal, including a challenge to the sufficiency of the evidence that Petitioner contends entitles him to relief. Such issues, although ultimately unsuccessful, were substantial. The claims presented in the motion for relief from judgment are not obviously stronger than the ones raised by appellate counsel on direct appeal. To be sure, the trial court, in considering the prejudice component of the cause and prejudice test, found that the claims lacked merit. Petitioner has thus failed to demonstrate that appellate counsel was ineffective so as to establish cause to excuse his procedural default.

Lastly, Petitioner has not demonstrated that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Murray v. Carrier*, 477 U.S. 478, 479-80 (1986). To be credible, such a claim of actual innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Actual innocence means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner has made no such showing. These claims are thus barred by procedural default, and do not warrant habeas relief.

## VI. Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the

denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)(citation omitted).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.  The Court concludes that jurists of reason would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court thus declines to issue Petitioner a certificate of appealability.

## VI. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**


                         s/Gerald E. Rosen
                         Chief Judge, United States District Court

Dated: August 3, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 3, 2011, by electronic mail and upon Deshawn Whitman, #259030, Earnest C. Brooks Correctional Facility, 2500 South Sheridan Drive, Muskegon Heights, MI 49444 by ordinary mail.

                         s/Ruth A. Gunther
                         Case Manager